# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3651-15T4

IN THE MATTER OF THE APPLICATION
OF THE STATE OF NEW JERSEY FOR
COMMUNICATIONS DATA WARRANTS TO
OBTAIN THE CONTENTS OF STORED
COMMUNICATIONS FROM TWITTER, INC.,
FROM USERS @ _____ AND @ _____,
ESS-147-CDW-16 AND ESS-148-CDW-16.

_____

APPROVED FOR PUBLICATION

February 2, 2017

APPELLATE DIVISION

Argued December 13, 2016 — Decided  February 2, 2017

Before Judges Messano, Guadagno and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket Nos. 147-CDW-16 and 148-CDW-16.

Camila A. Garces, Special Deputy Attorney General/Acting Assistant Prosecutor and Kayla Elizabeth Rowe, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Carolyn A. Murray, Acting Essex County Prosecutor, attorney; Ms. Garces, of counsel and on the brief).

Lawrence S. Lustberg, amicus curiae, argued the cause (Gibbons, P.C., attorneys; Mr. Lustberg and Avram D. Frey, on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

This appeal presents an issue of first impression involving

the Wiretapping and Electronic Surveillance Control Act (the

Act), N.J.S.A. 2A:156A-1 to -37.  The State of New Jersey sought two communications data warrants (CDWs), N.J.S.A. 2A:156A-29(a), to obtain from Twitter, Inc., an extensive list of information and data associated with two specific Twitter accounts (the accounts), as well as the contents of those accounts.[1]  The Law Division judge approved both warrants but edited both so as to include only the "visual but not oral component of video messages," and the "visual but not aural/oral component" of any "videos."

---

[1] "Twitter is self-described 'as an information network made up of 140-character messages called Tweets.'" State v. Hannah, ___ N.J. Super. ___, ___ n.1 (App. Div. 2016) (quoting In re J.F., 446 N.J. Super. 39, 44 n.7 (App. Div. 2016)).  "People post Tweets, which may contain photos, videos, links and up to 140 characters of text. These messages are posted to [the person's] profile, sent to [his or her] followers, and are searchable on Twitter search." New User FAQs, Twitter, Inc., https://support.twitter.com/articles/13920# (last visited Jan. 3, 2017).  Tweets may be "public" or "protected," and when an individual subscribes to Twitter, his or her tweets are public by default.  "About public and protected Tweets," Twitter, https://support.twitter.com/articles/14016#.  If a user changes the default settings to maintain privacy, the public may not simply access the Tweets unless the user consciously accepts the request.  "FAQs about following," Twitter, https://support.twitter.com/articles/14019#.  For our purposes, we assume the account holders in this case changed their default settings to maintain privacy over the contents of their Tweets, and therefore they are not accessible without judicial intervention.  See N.J.S.A. 2A:156A-4(c) (permitting interception of wire, electronic and oral communications when one party has given prior consent), and (e) (permitting the interception or access of electronic communications where they are "readily accessible to the general public").

After we granted the State's motion for leave to appeal, the judge filed a written amplification of reasons for his decision, Rule 2:5-1(b), which has significantly assisted our consideration of the issues. In large part, the judge relied upon the "Administrative Procedures for Wiretap Applications," issued in October 2010 by the Administrative Office of the Courts (AOC), and the AOC's Electronic Surveillance, Communications Data Warrant and Communications Information Order Manual (the Order Manual).[2] The judge quoted a portion of the latter "for analogous applications" involving searches of cellular phones with cameras:

> The type of application (Wiretap Order or CDW) to search a cellular phone depends upon the phone's capabilities. Some phones have the capability only to take pictures and other [sic] can record rolling video with audio.
>
> a. Current Law
>
> The current state of the law is that the audio portion of a video camera or video tape falls within the Wiretap Act as an oral communication. State v. Diaz, 308 N.J. Super. 504, 512 (App. Div. 1998). However, the Wiretap Act does not apply to silent video surveillance or the video portion of a videotape. Kinsella v. Welch, 362 N.J. Super. 143, 158 (App. Div. 2003). Therefore, a search for a video (without

---

[2] The Order Manual has since been updated, but the section cited by the judge in the 2012 version has remained virtually unchanged in the 2015 version.

audio) or a picture (without audio) in a cellular phone would require a CDW. <u>If there is an audio portion, a Wiretap Order is necessary</u>.

[<u>Id</u>. at 72 (emphasis added).]

Recognizing these secondary sources were "not precedent" and relying on <u>Diaz</u>, the judge concluded "the . . . Act applied to the State's application to intercept the aural, oral, or audio component of a video."

Given the ex parte nature of the State's applications and the need to maintain confidentiality as to the identity of the account holders, we requested amicus curiae address the issues presented for the benefit of the panel. We thank amicus for its participation in this appeal.

## I.

Amicus stressed during oral argument, and we agree, the issue is largely one of statutory interpretation. As a result, we start at the beginning, with the Act's definitions.

A "wire communication" is

<u>any aural transfer made</u> . . . through the use of facilities for the transmission of communications <u>by the aid of wire, cable or other like connection</u> between the point of origin and the point of reception, including the use of such connection in a switching station, furnished or operated by any person engaged in providing or operating such facilities for the transmission of intrastate, interstate or foreign communication.

[<u>N.J.S.A.</u> 2A:156A-2(a) (emphasis added).]

The Legislature's 1993 amendments to the Act substituted the term "aural transfer," now defined as "a transfer containing the human voice at any point between and including the point of origin and the point of reception[,]" <u>N.J.S.A.</u> 2A:156A-2(t), for the term "communication." <u>L.</u> 1993, <u>c.</u> 29 §§ 1-29 (the Amendment).[3]  The Amendment also provided that a "[w]ire communication includes <u>any electronic storage of such communication</u> . . . ." <u>N.J.S.A.</u> 2A:156A-2(a) (emphasis added). The Act defines an "oral communication" as "any . . . utter[ance] by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation . . . ." <u>N.J.S.A.</u> 2A:156A-2(b).

The Amendment also added several terms which we must consider.  An "[e]lectronic communication," as distinguished from a "wire communication" or "oral communication," is defined as

> <u>any transfer</u> of signs, signals, <u>writing, images, sounds, data</u>, or intelligence of any

---

[3] The 1993 amendments were identical to amendments Congress made to the Act's federal counterpart, Title III of the federal Omnibus Crime Control and Safe Streets Act, 18 <u>U.S.C.A.</u> §§ 2510-2520 (Title III), by enacting the Electronic Communications Privacy Act of 1986 (ECPA), Title II of which is known as the Stored Communications Act.  <u>White v. White</u>, 344 <u>N.J. Super.</u> 211, 218-19 (Ch. Div. 2001).

nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric or photo-optical system that affects interstate, intrastate or foreign commerce, but does not include:

(1) Any wire or oral communication . . . .

[N.J.S.A. 2A:156A-2(m)(1) (emphasis added).]

See State v. Gaikwad, 349 N.J. Super. 62, 77 (App. Div. 2002) (noting that in conjunction, the definitions of wire and electronic communications make "clear . . . the Legislature intended to cover the wide spectrum of potential communications made possible through technological advances"). The Amendment made both wire and electronic communications, but not oral communications, subject to "[e]lectronic storage," defined as "[a]ny temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof[,] and [a]ny storage of such communication by an electronic communication service for purpose of backup protection of the communication . . . ." N.J.S.A. 2A:156A-2(q).

Among other things, the Act makes it illegal for anyone to "[p]urposely intercept[] . . . any wire, electronic or oral communication . . . ." N.J.S.A. 2A:156A-3(a) (emphasis added); see also State v. Ates, 217 N.J. 253, 266 (explaining the statutory scheme), cert. denied sub nom., Ates v. New Jersey,

___ U.S. ___, 135 S. Ct. 377, 190 L. Ed. 2d 254 (2014). "'Intercept' means the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical, or other device[,]" meaning "any device or apparatus . . . that can be used to intercept a wire, electronic or oral communication . . . ." N.J.S.A. 2A:156A-2(c) and (d).

The State may apply ex parte to designated judges for "an order authorizing the interception of a wire, or electronic or oral communication . . . when such interception may provide evidence of the commission of" certain enumerated crimes. N.J.S.A. 2A:156A-8 (emphasis added). However, the State must shoulder a heavy burden before it may "intercept" a communication:

> In part, the judge must find probable cause to believe that
>
> > a. The person whose communication is to be intercepted is engaging or was engaged over a period of time as a part of a continuing criminal activity or is committing, has or had committed or is about to commit an [enumerated] offense . . . ;
> >
> > b. Particular communications concerning such offense may be obtained through such interception; [and]

> c. Normal investigative procedures
> with respect to such offense have
> been tried and have failed or
> reasonably appear to be unlikely
> to succeed if tried or to be too
> dangerous to employ.
>
> [Ates, supra, 217 N.J. at 266-267
> (alterations in original) (quoting N.J.S.A.
> 2A:156A-10(a)-(c)).]

The Amendment also created a new crime under the Act. N.J.S.A. 2A:156A-27 makes it unlawful to "knowingly . . . obtain[] . . . access to a wire or electronic communication while that communication is in electronic storage." (Emphasis added). With limited exceptions, an electronic communication service[4] "shall not knowingly divulge . . . the contents of a communication while in electronic storage . . . ." N.J.S.A. 2A:156A-28(a)(1).

One such exception permits disclosure to law enforcement "of the contents of an electronic communication," but not a wire communication, "without notice to the subscriber . . . if the law enforcement agency obtains a warrant[,]" i.e., a CDW. N.J.S.A. 2A:156A-29(a).[5] We have previously held

---

[4] An "'[e]lectronic communication service' means any service which provides to the users . . . the ability to send or receive wire or electronic communications . . . ." N.J.S.A. 2A:156A-2(p).

[5] The Act requires a lesser standard for access to "a record, the location information for a subscriber's or customer's mobile or

(continued)

> a CDW is not subject to the more restrictive procedures and enhanced protections of the . . . Act, which include a showing of necessity because normal investigative procedures have failed, N.J.S.A. 2A:156A-10. By contrast, N.J.S.A. 2A:156A-29(a) requires only that a law enforcement agency obtain a warrant upon a showing of probable cause.
>
> [State v. Finesmith, 408 N.J. Super. 206, 212 (App. Div. 2009).]

Additionally, unlike a wiretap order which may only be issued to intercept evidence of the commission of certain crimes, N.J.S.A. 2A:156A-8, a CDW may be obtained without regard to the nature of the crime being investigated.

The State argues that since the judge found sufficient probable cause for the issuance of a CDW, it was entitled to obtain all requested data stored by Twitter on behalf of the accounts, because that data, including the audio contents of any video, consisted of "electronic communications." Concomitantly, the State contends the data was held in post-transmittal "electronic storage" and not subject to interception, as defined

---

(continued)
wireless communications device, or other information pertaining to a subscriber or customer of the service," and not the contents of an electronic communication. N.J.S.A. 2A:156A-29(c). In those circumstances, the judge "shall issue" an "order for disclosure" "if the law enforcement agency offers specific and articulable facts showing that there are reasonable grounds to believe that the record or other information . . . is relevant and material to an ongoing criminal investigation." N.J.S.A. 2A:156A-29(e) (emphasis added).

by the Act. The State urges us to vacate the redactions and limitations entered by the judge on the CDWs.

Amicus suggests we affirm the CDWs as issued, albeit for reasons other than those expressed by the judge. See, e.g., Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) ("[I]t is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion."). It contends that the audio portions of the data were "wire communications" in "electronic storage," and the State's acquisition of the audio components of any video would constitute an "interception" under the Act. As a result, amicus submits a wiretap order was required, and the State failed to establish necessary grounds for its issuance.[6]

We have considered the arguments raised in light of the record and applicable legal standards. We reverse.

---

[6] Amicus also asserts that we should vacate the CDWs in their entirety because all communications, even "electronic communications" in "electronic storage," deserve enhanced protection under the Act. The well-recognized general rule is that "amicus curiae must accept the case before the court as presented by the parties and cannot raise issues not raised by the parties." State v. O'Driscoll, 215 N.J. 461, 479 (2013) (quoting State v. Lazo, 209 N.J. 9, 25 (2012)). Even though this appeal involves an ex parte application by the State, we conclude the general limitation placed upon amicus should apply and decline to consider, for purposes of this appeal only, the suggestion that the CDWs be vacated entirely.

## II.

### A.

"In construing the meaning of a statute, our review is de novo." State v. Goodwin, 224 N.J. 102, 110 (2016) (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012)). Our "goal . . . is to give effect to the intent of the Legislature." State v. Morrison, ___ N.J. ___, ___ (2016) (slip op. at 14) (quoting Maeker v. Ross, 219 N.J. 565, 575 (2014)). We first look at the statute's language, giving the words their plain meaning and enforcing the statute as written. State v. Grate, 220 N.J. 317, 330 (2015) (citing State v. Drury, 190 N.J. 197, 209 (2007)). However,

> [i]f the language is ambiguous or "admits to more than one reasonable interpretation, we may look to sources outside the language to ascertain the Legislature's intent." Such extrinsic sources, in general, may include the statute's purpose, to the extent that it is known, and the relevant legislative history.
>
> [Drury, supra, 190 N.J. at 209 (quoting State v. Reiner, 180 N.J. 307, 311 (2004)).]

Additionally, "[w]hen reviewing related statutory provisions we generally consider them in pari materia, harmonizing their meaning with the Legislature's intent." In re G.C., 179 N.J. 475, 481-82 (2004) (citing State v. Green, 62 N.J. 547, 554-56 (1973)).

Lastly, the Act was modeled after Title III of the federal Omnibus Crime and Safe Streets Act, 18 U.S.C.A. §§ 2510-2520, Ates, supra, 217 N.J. at 266, and "must be strictly construed to safeguard an individual's right to privacy." Id. at 268 (citations omitted). Although the Act is "more restrictive than the federal act in some respects," we have recognized that "when sections of the federal and state acts are substantially similar in language, it is appropriate to conclude that our Legislature's 'intent in enacting the sections of the . . . Act . . . was simply to follow the federal act.'" Diaz, supra, 308 N.J. Super. at 510 (quoting State v. Fornino, 223 N.J. Super. 531, 544 (App. Div.), certif. denied, 111 N.J. 570, cert. denied, 488 U.S. 859, 109 S. Ct. 152, 102 L. Ed. 2d 123 (1988)). Interpretations of the federal act, therefore, provide additional guidance in construing similar provisions of the Act. Ibid.

## B.

As an initial matter, the videos posted on the accounts were not "oral communications" as defined by the Act.[7] In Diaz, supra, 308 N.J. Super. at 506, we "consider[ed] the

---

[7] The judge concluded the audio portions of any videos or video messages were "oral communications" under the Act. Amicus agrees with the State that the judge's reasoning in this regard was incorrect.

admissibility of a videotape, which include[d] a sound recording, made by parents in their own home of the conduct of their child's daytime 'nanny.'" After reviewing federal precedent, we concluded that the "Act was not intended to apply to a recorded silent video surveillance or the video portion of a videotape which includes a sound component." Id. at 512. However, we expressly did not consider the admissibility of the "audio portion" of the recording that included the defendant's phone conversations with others not seen on the videotape. Id. at 512-13. We also concluded that the defendant's statements to the child captured on the video were admissible under the theory of "vicarious consent." Id. at 516.

We agree with Diaz to the extent it implied audio portions of surreptitiously-recorded videos may be "oral communications" subject to the Act. However, federal precedent makes clear that "oral communications" are "narrowly defined as a nonelectronic 'oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation.'" In re High Fructose Corn Syrup Antitrust Litig., Delwood Farms, Inc., 216 F.3d 621, 622-23 (7th Cir. 2000) (emphasis added) (quoting 18 U.S.C.A. § 2510(2)); see also Huff v. Spaw, 794 F.3d 543, 548-54 (6th Cir. 2015) (holding communications were "oral"

where the plaintiff unknowingly "pocket-dialed" the defendant on his cell phone, and the defendant heard and recorded face-to-face conversations between the plaintiff and others); United States v. King, 335 F. Supp. 523, 548 (S.D. Cal. 1971), remanded in part on other grounds, 478 F.2d 494 (9th Cir. 1973) (in-person, background conversations overheard via wiretap were "oral communications" and not within the scope of a wiretap order authorizing interception of wire communications); Daniel J. Solove, Reconstructing Electronic Surveillance Law, 72 Geo. Wash. L. Rev. 1264, 1279 (2005) (explaining "if the police attempted to place a bug in one's home to record one's dinnertime conversations, this would be an interception of oral communication"). This narrow interpretation of an "oral communication" finds support in the legislative history of the Act's federal counterpart. See S. Rep. No. 99-541, 99th Cong. 2d Sess., at 13 (1986) ("In essence, an oral communication is one carried by sound waves, not by an electronic medium.").

We have no idea what the audio portions of any videos or video messages posted on the accounts in this case might contain. If, for example, a posted video included the contemporaneous recording of a conversation, that recording might well be considered an interception of an oral communication subject to the Act. See id. at 17 (indicating

Title III would apply to the "interception of the audio portion of a [videotaped] meeting"). However, we are firmly convinced that a posted video held by Twitter is not itself an oral communication as defined by the Act, nor is its audio portion a separate "oral communication" that must be segregated from the video portion and only obtained by issuance of a wiretap order.

In this regard, we liken the situation to those numerous cases that have held satellite television transmissions that contain the aural transfer of sounds, including, presumably the human voice, do not lose their character as "electronic communications," whose contemporaneous illegal interception is prohibited by the federal act. See DIRECTV Inc. v. Pepe, 431 F.3d 162, 166-67 (3d Cir. 2005) (citing DIRECTV Inc. v. Nicholas, 403 F.3d 223, 225-26 (4th Cir. 2005); United States v. One Macom Video Cipher II, SN A6J050073, 985 F.2d 258, 261 (6th Cir. 1993); United States v. Herring, 993 F.2d 784, 787 (11th Cir. 1993); United States v. Lande, 968 F.2d 907, 909-10 (9th Cir. 1992); United States v. Davis, 978 F.2d 415, 417-18 (8th Cir. 1992); United States v. Splawn, 982 F.2d 414, 415-16 (10th Cir. 1992)(en banc)).[8]

_____

[8] The State correctly points to some of the practical problems associated with the judge's reasoning and why compliance with the wiretap provisions of the Act to secure the audio portions of these videos is impossible. The Act requires any application
(continued)

Rather, we must decide whether videos and video messages held in Twitter accounts are "electronic communications," which may be accessed with a CDW when held in storage, or, as amicus urges, "wire communications," the interception of which, even when held in storage, requires a wiretap order.[9] Amicus properly

(continued)
for a wiretap order to include a "showing that there is probable cause to believe that such communication will be communicated on the wire or electronic communication facilities involved . . . ." N.J.S.A. 2A:156A-9(c). The audio portion of the subject videos has already been communicated and recorded. N.J.S.A. 2A:156A-10(d) requires that, with certain exceptions, the wiretap order shall be issued only if there is probable cause "the facilities from which, or the place where, the wire, electronic or oral communications are to be intercepted, are or have been used, or are about to be used, in connection with the commission of [certain] offense[s], or are leased to, listed in the name of, or commonly used by, such individual." As the State points out, it may never know who recorded a posted video, or when or how it was recorded. Every interception made pursuant to a wiretap order is subject to minimization, N.J.S.A. 2A:156A-12(f), requiring the State to terminate "as soon as practicable," any unnecessary interception. We have no idea how the State could comply with such a requirement regarding the audio portion of these videos. Finally, in many circumstances, the Act requires the service of an inventory of intercepted conversations upon the individuals whose conversations were intercepted. N.J.S.A. 2A:156A-16. The State correctly notes that it may never be able to identify those whose oral communications are captured in the audio component of the videos.

[9] In adding "electronic storage" to the definition of "wire communications," Congress's "sole purpose . . . was to protect voice mail . . . ." United States v. Councilman, 418 F.3d 67, 76 (1st Cir. 2005). Notably in 2001, as part of the Patriot Act, Congress amended the federal statute to remove "electronic storage" from the definition of "wire communication." See 18 U.S.C.A. § 2510(1). In so doing, "Congress . . . reduce[d]
(continued)

points to the blurring of any distinction between the definitions of the two types of communications, since a "wire communication" means any "aural transfer made in whole or in part . . . by the aid of a wire . . . or other like connection[,]" N.J.S.A. 2A:156A-2(a), while an electronic communication includes "any transfer of . . . sounds . . . of any nature transmitted in whole or in part by a wire . . . system . . . ." N.J.S.A. 2A:156A-2(m). Indeed, in construing the similar provisions of Title III and the ECPA enacted by Congress in 1986, federal courts have observed "the intersection of these two statutes 'is a complex, often convoluted, area of the law.'" Konop, supra, 302 F.3d at 874 (quoting United States v. Smith, 155 F.3d 1051, 1055 (9th Cir. 1998)); see also, Steve Jackson Games, Inc. v. United States Secret Serv., 36 F.3d 457, 462 (5th Cir. 1994) (noting the federal statute is "complex,"

_____

(continued)
protection of voice mail messages to the lower level of protection provided other electronically stored communications." Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 878 (9th Cir. 2002) (citations omitted). Our Legislature has not made a similar change to the Act.

However, the continued use of "electronic storage" in the definition of a "wire communication" does not, as amicus suggests, necessarily mean Tweets and associated videos are no longer "electronic communications." See Councilman, supra, 418 F.3d at 78 ("No document or legislator ever suggested that the addition of the electronic storage clause to the definition of 'wire communication' would take messages in electronic storage out of the definition of 'electronic communication.'").

and "famous (if not infamous) for its lack of clarity") (citations omitted).

Whether the particular communication contains the human voice is not dispositive of whether it is a "wire" or "electronic communication," and, to the extent amicus urges that the presence of audio on these Twitter videos means they are wire communications, we reject the contention. As originally drafted, the ECPA intended to "substitute[] the phrase 'electronic communication' for 'wire communication' throughout the Act, and subsum[e] wire communications within the newly-defined term 'electronic communication.'" Councilman, supra, 418 F.3d at 76. However, as enacted, the ECPA added the term "electronic communication" to the existing term "wire communication," and, as we already noted, the Amendment made similar changes in the Act. Nevertheless,

> Congress intended to give the term "electronic communication" a broad definition:

> > The term 'electronic communication' is intended to cover a broad range of communication activities. . . . As a rule, a communication is an electronic communication if it is neither carried by sound waves nor can fairly be characterized as one containing the human voice (carried in part by wire). Communications consisting solely

18

> of data, for example . . . would
> be electronic communications.
>
> [Id. at 77 (quoting H.R. Rep. No. 99-647
> at 35 (1986)).]

Despite these seeming limitations on the term, the Senate report included "video teleconferences" as an example of electronic communications. S. Rep. No. 99-541, supra, at 14. In enacting the Amendment, our Legislature clearly contemplated "electronic communications" could include the human voice, stating the term included "digital or voice transmissions to a beeper, a pager, fax machines, electronic mail service and computers." Assembly Judiciary, Law and Public Safety Comm., Statement to A. Nos. 130 and 1587 (Sept. 21, 1992) (emphasis added).

Courts have expressed frustration with the failure to update the federal statute to keep pace with the advent of the Internet and social media platforms like Twitter. See, e.g., Ehling v. Monmouth-Ocean Hosp. Serv. Corp., 961 F. Supp. 2d 659, 666 n.2 (D.N.J. 2013) ("Most courts, including this one, would prefer that Congress update the statute to take into account the invention of the Internet."); Konop, supra, 302 F.3d at 874 ("[U]ntil Congress brings the laws in line with modern technology, protection of the Internet . . . will remain a confusing and uncertain area of the law."). However, courts have uniformly concluded that communications sent to social

media platforms or even private websites are clearly "electronic communications" under the federal act. See Konop, supra, 302 F.3d at 876 (the plaintiff's private "website fits the definition of 'electronic communication'"); Ehling, supra, 961 F. Supp. 2d at 667 ("Facebook wall posts are electronic communications."); In re Application of the United States, 830 F. Supp. 2d 114, 127-28 (E.D. Va. 2011) (reviewing statutory scheme as applied to an order for access to Twitter accounts); In re § 2703(d) Order, 787 F. Supp. 2d 430, 436 (E.D. Va. 2011) (same).

We conclude the Twitter postings are "electronic communications" as defined by the Act. Like its federal counterpart, the Amendment's definition of "electronic communications" intentionally included a broad range of communications that, unlike wire communications, were not narrowly defined so as to require an "aural transfer" of information. N.J.S.A. 2A:156A-2(a). Twitter users routinely convey their messages without any aural component at all, instead, using the "transfer of signs, signals, writing . . . [and] data" in their posts. N.J.S.A. 2A:156A-2(m). The purposely-intended broader definition of "electronic communications," see Councilman, supra, 418 F.3d at 76-77, sweeps in other forms of transfer, like "images [and] sounds,"

N.J.S.A. 2A:156A-2(m), but the mere presence of the human voice does not change the inherent nature of a Tweet.

As a corollary, the State argues accessing Tweets in storage on Twitter's servers is not an "interception" under the Act. Amicus acknowledges the videos are in "storage," but contends that the interception of a wire communication in storage still requires a wiretap order, not a CDW. Although we conclude the audio components of the videos stored by Twitter are part and parcel of electronic communications, not wire or oral communications, we must still address the issue, because the Act prohibits the interception of "electronic communications" without a wiretap order. N.J.S.A. 2A:156A-3.

We agree with the State and the overwhelming federal precedent that holds interception, as defined by the Act and the federal act, contemplates the acquisition of the communication contemporaneously with its transmission. Luis v. Zang, 833 F.3d 619, 629 (6th Cir. 2016); accord Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 113-14 (3d Cir. 2003), as amended (Jan. 20, 2004); United States v. Steiger, 318 F.3d 1039, 1048-49 (11th Cir. 2003); Konop, supra, 302 F.3d at 878; Ehling, supra, 872 F. Supp. 2d at 371-72; Finesmith, supra, 408 N.J. Super. at 212. But see Councilman, supra, 418 F.3d at 80 (expressing doubt as to the contemporaneity requirement). In this case, the State

does not seek to access the electronic communications in transmission. Rather, the State seeks to access the electronic communications already in "electronic storage" on Twitter's servers. See Steve Jackson Games, Inc., supra, 36 F.3d at 462 ("Congress did not intend for 'intercept' to apply to 'electronic communications' when those communications are in 'electronic storage.'").

We conclude the audio portions of the videos and video messages held in the accounts by Twitter are "electronic communications" under the Act, in electronic storage and accessible to the State through the CDWs issued by the Law Division judge. We therefore remand the matter to the Law Division for entry of CDWs that do not contain the edits and deletions limiting the State's access. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION