**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1847-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RONALD T. DANIELS, JR.,

    Defendant-Appellant.

_____

Submitted May 14, 2018 – Decided March 11, 2019

Before Judges Ostrer and Whipple.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 13-07-1240.

Joseph E. Krakora, Public Defender, attorney for appellant (Margaret R. Mclane, Assistant Deputy Public Defender, of counsel and on the briefs).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica L. do Outeiro, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

Before obtaining an order authorizing electronic surveillance, the applicant must show, and the court must find probable cause to believe, that "normal investigative procedures . . . have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ." N.J.S.A. 2A:156A-9(c)(6) (application for order); N.J.S.A. 2A:156A-10(c) (grounds for entering order). Contending that the State failed to satisfy that "necessity requirement" of the New Jersey Wiretapping and Electronic Surveillance Control Act (Wiretap Act or Act), N.J.S.A. 2A:156A-1 to -37, defendant Ronald T. Daniels, Jr., sought to suppress the fruits of a wiretap that led to his indictment, and that of several others, on charges of first-degree racketeering, gang criminality, and possession of controlled dangerous substances with intent to distribute, as well related second- and third-degree crimes. The trial court denied defendant's suppression motion.[1]

Defendant thereafter pleaded guilty to participating in a racketeering conspiracy to distribute more than five ounces of heroin. N.J.S.A. 2C:5-2; N.J.S.A. 2C:41-2(d). The court sentenced defendant to a ten-year prison term,

---

[1] The trial court also rejected defendant's contention that the State failed to minimize the interception of communications not subject to interception, see N.J.S.A. 2A:156A-12(f), but defendant does not pursue that issue on appeal.

two years shorter than the plea agreement allowed, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. The term was to run consecutive to the sentence defendant received in a separate case for unlawful possession of a handgun.[2]

Defendant appeals, contending:

> THE COURT ERRED DENYING THE SUPPRESSION MOTION BECAUSE THE STATE FAILED TO ESTABLISH THAT NORMAL INVESTIGATIVE PROCEDURES WERE UNLIKELY TO SUCCEED.

Defendant also challenges his sentence, contending:

> THE COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES AND THE AGGREGATE SENTENCE IS MANIFESTLY EXCESSIVE.

Having carefully reviewed defendant's arguments in light of the record and applicable legal principles, we affirm the conviction and sentence.

I.

We review for an abuse of discretion a trial court's decision to grant an order authorizing wire and electronic surveillance. See State v. Dye, 60 N.J. 518, 526-27 (1972) (reviewing compliance with necessity requirement); see also

---

[2] We affirmed the conviction and sentence in that case in a separate opinion. State v. Daniels, No. A-5223-14 (App. Div. Mar. 4, 2019) (Daniels I).

State v. Feliciano, 224 N.J. 351, 378 (2016) (requiring compliance with minimization requirement). When a defendant challenges compliance with the necessity requirement, a reviewing court shall consider whether "the facts contained in the affidavit sufficiently indicated that normal police investigative methods would not serve the purpose . . . ." Dye, 60 N.J. at 526. We review questions of law de novo. State v. K.W., 214 N.J. 499, 507 (2013).

In order to maximize individual privacy, our courts strictly construe and enforce the Wiretap Act. State v. Worthy, 141 N.J. 368, 379-80 (1995) (stating that the legislative concern for privacy "demands the strict interpretation and application" of the Act). In interpreting the Act, we carefully consider federal decisions interpreting the federal statute upon which the Act is based. State v. Ates, 217 N.J. 253, 269 (2014); In re Application of State for Commc'ns Data Warrants to Obtain the Contents of Stored Commc'ns from Twitter, Inc., 448 N.J. Super. 471, 479-80 (App. Div. 2017). The federal provisions that mirror sections 9(c)(6) and 10(c) of the Act are found at 18 U.S.C. § 2518(1)(c) and 18 U.S.C. § 2518(3)(c). Failure to comply with the Act's substantive or critical requirements shall result in the suppression of evidence. See Worthy, 141 N.J. at 381-86; N.J.S.A. 2A:156A-21.

4

The "necessity requirement" is "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Kahn, 415 U.S. 143, 153 n.12 (1974). The requirement assures that electronic surveillance is not "routinely employed as the initial step in [a] criminal investigation." United States v. Giordano, 416 U.S. 505, 515 (1974). But, the requirement does not render electronic surveillance a "last resort" either. United States v. Macklin, 902 F.2d 1320, 1327 (8th Cir. 1990).

It has been said the necessity requirement should be applied in a "practical and common[-]sense fashion." See, e.g., In re Dunn, 507 F.2d 195, 197 (1st Cir. 1974); see also James G. Carr, The Law of Electronic Surveillance §4.4(d) at 4-54 (1989) (Electronic Surveillance) (acknowledging but criticizing the "practical and common-sense" standard, which originated in the Senate Committee Report). Yet, wiretap applications should explain the necessity through "particular facts of the case at hand," and not boilerplate generalizations. United States v. Campos, 541 F.3d 735, 749 (7th Cir. 2008).

Federal case law establishes that the government can satisfy the necessity requirement in three ways:

> One is by showing the failure of other methods, which
> need not go so far as to indicate that every conceivable

investigatory alternative has been unsuccessfully attempted. The second is by showing other methods are unlikely to succeed, which can be accomplished, for example, by indicating the difficulty in penetrating a particular conspiracy or by asserting that a conventional search warrant would not likely produce incriminating evidence. The third alternative is showing other methods would be too dangerous, either in terms of disclosing the investigation or placing an officer or informant in physical danger.

[2 Wayne R. LaFave et al., Criminal Procedure §4.6(e), at 555-57 (4th ed. 2015) (citing cases).]

See also Carr, Electronic Surveillance § 4.4(d)(1)-(3) (reviewing cases that establish the failure, likely disutility, or danger of other methods). Of particular relevance to this case, the government may satisfy the necessity requirement if non-electronic methods fall short of disclosing the full extent of a conspiracy, even if those methods would support prosecution against known individuals. See United States v. Perez, 661 F.3d 568, 581-82 (11th Cir. 2011) (noting that even though the government possessed sufficient evidence to prosecute one suspect, "it had only limited knowledge of the full extent of his criminal activities and his coconspirators").

Consistent with these principles, our Supreme Court held that the State met the necessity requirement by showing: the suspects' refusal to engage in illicit behavior with an undercover agent; the limited success of undercover

6

surveillance; and investigators' inability to identify coconspirators absent wire and electronic surveillance. Dye, 60 N.J. at 526. In State v. Christy, 112 N.J. Super. 48, 64-65 (Cty. Ct. 1970), then-Judge Handler held the affiant met the necessity requirement by explaining that sustained surveillance would arouse suspicion and jeopardize the investigation; and the illegal operation was carried out in such a "furtive and surreptitious manner" that investigators would be unable to identify the participants and their involvement without wiretapping. Similarly, we held the necessity requirement was met where the affiant reasonably concluded that an undercover officer's continued efforts to insinuate himself into the criminal operation would not be productive, in light of heightened suspicions, and might jeopardize the entire investigation. State v. Pemberthy, 224 N.J. Super. 280, 297 (App. Div. 1988). Furthermore, a target's surreptitious activities "rendered physical surveillance alone extremely difficult if not impossible." Ibid.

Applying these principles, we discern no basis to disturb the trial court's order denying defendant's motion to suppress. We have reviewed in detail the detective's lengthy affidavit in support of the initial order, and his two affidavits leading to two subsequent orders renewing and expanding the surveillance. The

affidavits present sufficient facts to support the conclusion that the necessity requirement was met.

In the detective's first affidavit, submitted in September 2012, he described the activities of thirteen known target subjects, including defendant, who were members of, or associated with, a set of the Bloods street gang. Those activities included numerous hand-to-hand drugs sales to an undercover investigator between July and September. All the sales were arranged by communications through the three target telephone facilities. These undercover buys and related surveillance disclosed that defendant participated in the drug distribution jointly with other subjects.

The detective also identified target subjects who were engaged in acts of violence and the trafficking of firearms. The detective recounted several separate incidents involving shootings, robbery, and homicide. One such incident involved defendant's arrest for possession of a handgun that was later connected to a gang-related homicide. (That arrest later led to his conviction in Daniels I.) The detective described posts on social media depicting gatherings or other joint endeavors (such as raising bail for defendant), which demonstrated that the target subjects were part of a closed group. He also described efforts of

the Fruit Town Brims set of the Bloods, to which defendant belonged, to recruit new members.

Despite the ongoing surveillance and undercover transactions, the investigators were unable to determine the hierarchy and structure of the targets' enterprise, or to identify all the participants. Although the investigators could prove individual sales of drugs, they were not privy to the targets' suppliers, their customers, or the extent of their distribution network.

The detective asserted that it would be impossible to determine the hierarchy and structure of the enterprise without electronic surveillance. He noted that the investigation was frustrated by the "lack of full cooperation of any co-conspirators or witnesses." The confidential informants who assisted investigators in conducting undercover purchases insisted upon retaining their anonymity, out of fear of retaliation, and thus could not be expected to serve as witnesses. The group was also resistant to further infiltration by an undercover agent. The detective noted that one undercover agent's safety was already threatened. In particular, defendant attempted to compel the agent to consume a bag of heroin to prove he was not a police officer. "Efforts to introduce another undercover officer was abandoned when detectives suspected she was being set

up for a robbery." The targets' propensity for gun violence exacerbated the danger.

Neither surveillance nor search warrants could provide the information the investigators sought. Physical surveillance was limited to confirming hand-to-hand transactions on the street. Search warrants would not enable the investigators to uncover the identity of additional coconspirators. Telephone record data had limited usefulness. Such data did not disclose the contents of communications. Nor did the data disclose the identity of the communicants, because the targets extensively used pre-paid telephones.

In October, the detective sought renewal of the order as it pertained to two of the original target phones, including defendant's, plus four additional wireless phones, including one defendant's father used. Over the next month, the detective sought renewal and expansion of the order to cover a total of nine phones, including two used by defendant. The detective described the previously intercepted calls and texts messages, which disclosed how defendant and others, including defendant's father, worked together to distribute heroin and other controlled dangerous substances in Long Branch and other areas. The interception led investigators to identify numerous individuals believed to purchase heroin from the group. Other intercepted communications apparently

10

referenced the group's supplier by a nickname. The wiretap also disclosed continued gun trafficking activities. Tellingly, the communications disclosed that members of the group were aware of some police investigative efforts.

Echoing the justifications for the first order, the detective in both renewal affidavits described the limitations of "normal investigative procedures" and the need to continue to pursue electronic surveillance. The detective noted that the drug distribution enterprise utilized wireless communications to operate, which in turn necessitated interception of those communications to understand the scope of that enterprise.

In sum, the detective demonstrated, with sufficient factual support, that although "normal investigative procedures" were tried and successful in securing evidence of discrete offenses, they failed to secure, and would be unlikely to secure, evidence of the scope and activities of the larger suspected criminal operation, or would be "too dangerous to employ." N.J.S.A. 2A:156A-9(c)(6); N.J.S.A. 2A:156-10(c). We therefore affirm the trial court's order denying the motion to suppress.

## II.

Defendant's plea agreement provided that "consecutive sentences are likely," although he could argue for concurrent sentences. His agreement also

authorized the court to impose a twelve-year term for the racketeering conspiracy conviction. As noted above, the court imposed a ten-year term for the racketeering conspiracy, to run consecutive to the eight-year term imposed on his conviction for unlawful possession of a handgun.

Defendant challenges the consecutive sentence. He contends concurrent sentences were mandated because the gun possession was linked to the racketeering conspiracy. Defendant notes that the first wiretap affidavit mentioned defendant's gun arrest.

We are not persuaded. Declaring "there can be no free crimes in a system for which the punishment shall fit the crime," the Supreme Court directed sentencing courts to consider whether:

> (a) the crimes and their objectives were predominantly independent of each other;
> (b) the crimes involved separate acts of violence or threats of violence;
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
> (d) any of the crimes involved multiple victims;
> (e) the convictions for which the sentences are to be imposed are numerous; . . .
>
> [State v. Yarbough, 100 N.J. 627, 643-44 (1985).]

The trial judge focused on factors (a) and (c). He found that the racketeering conspiracy to which defendant pleaded guilty was independent of his conviction for gun possession. The court noted that the gun that defendant possessed was linked to a murder, which related to a dispute between gangs. The gun possession therefore had separate objectives from the racketeering conspiracy. The judge also observed that the two offenses did not occur at the same time – the drug conspiracy both preceded and followed the gun offense.

We discern no grounds to disturb the court's conclusion. Notwithstanding the observations in the wiretap affidavit, there was no evidence the gun possession furthered the racketeering conspiracy to which defendant pleaded guilty. Although the racketeering conspiracy count of the indictment charged that the enterprise engaged in acquiring firearms, defendant did not mention that in his allocution, admitting only to engaging in a racketeering conspiracy to distribute heroin.

We recognize that the trial judge did not expressly analyze every Yarbough factor. Nonetheless, we can "'readily deduce'" that the judge found they did not outweigh the fact that the two offenses were independent. See State v. Miller, 205 N.J. 109, 129-30 (2011) (quoting State v. Bieniek, 200 N.J. 601, 609 (2010)). The fact that neither conviction involved an act of violence by

defendant does not minimize the seriousness of the two offenses. Furthermore, although the gun possession on a single date in September overlapped with the conspiracy, the offenses were independent.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION